UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADRIAN DAVID AZUAJE LOZADA,<br><br>Petitioner,<br><br>v.<br><br>CHRISTOPHER LAROSE, Warden at Otay Mesa Detention Center, et al.,<br><br>Respondents. | Case No.: 25cv3614-LL-KSC<br><br>**ORDER GRANTING AMENDED PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241**<br><br>**[ECF No. 6]** |

Pending before the Court is Petitioner Adrian David Azuaje Lozada's Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. ECF No. 6 ("Amended Pet."). Also before the Court is Respondents' Response to the Amended Petition [ECF No. 12] and Petitioner's Traverse [ECF No. 13]. For the reasons set forth below, the Court **GRANTS** Petitioner's Amended Petition for Writ of Habeas Corpus.

## I. BACKGROUND

Petitioner Adrian David Azuaje Lozada "fled Venezuela in 2024 [due to persecution] and traveled to Mexico to apply for lawful entry into the United States." Amended Pet. at 3 (citing ECF No. 6-1 at 2-6, Declaration of Adrian David Azuaje Lozada ("Lozada Decl."), ¶ 2). Petitioner states that he has a "legitimate fear of torture or persecution if [he] is returned to Venezuela due to [his] refusal to join a government-

associated group." *Id.* ¶ 8. Upon arriving in Mexico after fleeing Venezuela, he stayed there for two and a half months, waiting to get a "CBP One" mobile application interview appointment in order to apply for asylum upon arrival to the United States. *Id.* ¶ 2. Petitioner states that he "lawfully entered the United States through the San Ysidro Port of Entry on October 1, 2024, after obtaining a group interview appointment through the 'CBP One' mobile application." *Id.* (citing Lozada Decl. ¶ 3). Petitioner was granted humanitarian parole on October 1, 2024. *Id.* ¶¶ 3-4, 7; *see also* ECF No. 11 at 5 (SEALED) (Exhibit F attached to Amended Pet.). Petitioner completed his application for asylum and was also given paperwork that he "was to report for an in-person hearing before the immigration court in Dallas, Texas about a year later on October 7, 2025." Amended Pet. 3 (citing Lozada Decl. ¶ 4); *see also* ECF No. 6-1 at 8-11 (hereinafter "Ex. B"). After entering the United States on October 1, 2024, Petitioner was told to call a telephone number to let ICE know he was now in the country. Lozada Decl. ¶ 5. On or about October 4, 2024, Petitioner received paperwork from ICE indicating that he was to report for an ICE check-in appointment on October 8, 2025. *Id.* Subsequently, Petitioner applied for and received a work authorization which allowed him to work as a welder in Dallas, Texas. *Id.* ¶ 6.

When Petitioner appeared for his October 7, 2025 immigration court hearing, he was told by the immigration judge ("IJ") that he was not going to address the asylum or CAT withholding of removal claims. *Id.* ¶ 7. Instead, Petitioner was given notice to attend a subsequent in-person hearing before the IJ on December 7, 2028. *Id.; see also* ECF No. 1-3. On October 8, 2025, when Petitioner attended his ICE check-in appointment, he was arrested and detained at the Prairieland Detention Facility in Alvarado, Texas, for one week before being transferred to the Otay Mesa Detention Center where he is now. *Id.* ¶ 9. Petitioner was not given notice or a hearing prior to the revocation of his parole. Amended Pet. at 2.

On January 5, 2026, Petitioner filed the operative Amended Petition alleging that the "government's effective revocation of Mr. Azuaje's parole and detention violated the

25cv3614-LL-KSC

Administrative Procedures Act and procedural due process." *Id.* at 5. He seeks a writ of habeas corpus directing Respondents to order his immediate release under the same conditions of parole that he had previously and to return his Venezuelan passport. *Id.* at 13-14.

On January 16, 2026, Respondents filed a Response acknowledging that (1) DHS instituted a notice on July 8, 2025 requiring that "anyone arrested in the United States and charged with being inadmissible to be considered an 'applicant for admission' under 8 U.S.C. § 1225(b)(2)(A), subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) and not subject to detention under 8 U.S.C. § 1226(a)"; (2) in the class action *Maldonado Bautista v. Santacruz*, No. 5:25-cv-01873-SSS-BFM, 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025), the district court declared the DHS notice unlawful under the Administrative Procedures Act; (3) a final judgment was entered in *Maldonado Bautista* on December 18, 2025; and (4) therefore, Petitioner is detained under 8 U.S.C. § 1226(a) and entitled to an order from this Court directing a bond hearing pursuant to 8 U.S.C. § 1226(a). ECF No. 12; *see also Maldonado Bautista v. Noem*, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3678485, at *1 (C.D. Cal. Dec. 18, 2025) (entering final judgment for members of the Bond Eligible Class).

On January 18, 2026, Petitioner filed a Traverse arguing that a bond hearing is not an adequate remedy for re-detention in violation of his due process rights and the Administrative Procedures Act, and the appropriate remedy is his immediate release from custody. ECF No. 13 at 5.

## II.  LEGAL STANDARD

A district court may grant a writ of habeas corpus when a petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c); *Magana-Pizano v. I.N.S.*, 200 F.3d 603, 609 (9th Cir. 1999) ("28 U.S.C. § 2241 expressly permits the federal courts to grant writs of habeas corpus to aliens when those aliens are 'in custody in violation of the Constitution or laws or treaties of the United States.'"). In federal habeas proceedings, the petitioner bears the burden of proving his case

25cv3614-LL-KSC

by a preponderance of evidence. *Lambert v. Blodgett*, 393 F.3d 943, 970 n.16 (9th Cir. 2004); *Bellew v. Gunn*, 532 F.2d 1288, 1290 (9th Cir. 1976) (citations omitted).

### III.   DISCUSSION

Petitioner argues that "the government's effective revocation of [his] parole and detention violated the Administrative Procedures Act and procedural due process. Amended Pet. at 5. Respondents do not directly address Petitioner's claims, instead conceding that in light of *Maldonado Bautista*, Petitioner is detained under 8 U.S.C. § 1226(a) and entitled to a bond hearing. ECF No. 12. Petitioner filed a Traverse arguing that a bond hearing is not an adequate remedy for re-detention in violation of his due process rights and the Administrative Procedures Act, and the appropriate remedy is his immediate release from custody. ECF No. 13 at 5. The Court agrees with Petitioner for the reasons set forth below.

### A.   Due Process Clause

The Fifth Amendment guarantees that no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Demore v. Kim*, 538 U.S. 510, 523 (2003) (citing *Reno v. Flores*, 507 U.S. 292, 306 (1993)). The Due Process Clause generally "requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990).

The Court finds that having been previously released on humanitarian parole, Petitioner had a protected liberty interest in remaining free from detention. "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (citations omitted). Although the initial decision to detain or release an individual may be within the government's discretion, "the government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked

25cv3614-LL-KSC

only if [they] fail[] to live up to the . . . conditions [of release].'" *Id.* (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)) (alterations in original).

As Petitioner has a protected liberty interest, the Due Process Clause requires procedural protections before he can be deprived of that interest. *See Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976). To determine which procedures are constitutionally sufficient to satisfy the Due Process Clause, the Court considers the following factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the [g]overnment's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335.

The Court finds that all three factors support a finding that the government's revocation of Petitioner's parole without notification, reasoning, or an opportunity to be heard, denied Petitioner of his due process rights. First, as discussed above, Petitioner has a significant liberty interest in remaining out of custody pursuant to his parole. *See Pinchi*, 792 F. Supp. 3d at 1032 ("Thus, even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody." (citations omitted)). Freedom from detention is a fundamental part of due process protection. *See Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) ("[F]reedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.'" (quoting *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992))).

Second, the risk of an erroneous deprivation of such interest is high as Petitioner's parole was revoked without providing him a reason for revocation or giving him an opportunity to be heard. Since the initial determination that Petitioner should be paroled because he posed no danger to the community and was not a flight risk, there is no evidence that these findings have changed. *See Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir.

25cv3614-LL-KSC

2018) ("Release reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk."). While on humanitarian parole, Petitioner was given a Social Security card and work authorization, lived in the community without issue, and applied for asylum. Traverse at 4; *see also* Lozada Decl. ¶¶ 6-8, 12, 14. "Once a noncitizen has been released, the law prohibits federal agents from rearresting him merely because he is subject to removal proceedings." *Saravia v. Sessions*, 280 F. Supp. 3d at 1176. "Rather, the federal agents must be able to present evidence of materially changed circumstances—namely, evidence that the noncitizen is in fact dangerous or has become a flight risk . . . ." *Id.* The risk of erroneous deprivation of Petitioner's liberty is high because neither the government nor Petitioner has had an opportunity to determine whether there is any valid basis for his detention. *Pinchi*, 792 F. Supp. 3d at 1035 (citation omitted). It follows that the probable value of additional procedural safeguards, such as notice and a pre-deprivation hearing, is also high.

Third, the government's interest in detaining Petitioner without notice, reasoning, and a hearing is low. *See Pinchi*, 792 F. Supp. 3d at 1036 ("[T]he government has articulated no legitimate interest that would support arresting [petitioner] without a pre-detention hearing."); *Matute*, 2025 WL 2817795, at *6; *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. Nov. 22, 2019) ("If the government wishes to re-arrest [petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low."). There is no indication that providing proper notice, reasoning, and a pre-deprivation hearing would be fiscally or administratively burdensome on the government.

Therefore, because Respondents detained Petitioner by revoking his parole without notice and a hearing in violation of the Due Process Clause, his detention is unlawful. *See, e.g.*, *Sanchez v. LaRose*, No. 25-CV-2396-JES-MMP, 2025 WL 2770629, at *4 (S.D. Cal. Sept. 26, 2025) (finding the petitioner's parole was revoked without notice and a hearing and without a showing of a change of circumstances, thus violating her due process rights

25cv3614-LL-KSC

and rendering her detention unlawful).[1] The proper remedy for the unlawful detention is Petitioner's immediate release subject to the conditions of his preexisting parole. *See Noori*, 2025 WL 2800149, at \*1 (finding DHS violated the petitioner's due process rights by revoking his parole without notice or a hearing and ordering his immediate release); *Sanchez*, 2025 WL 2770629, at \*5 (same); *Ortega*, 415 F. Supp. 3d at 970 (ordering immediate release after the petitioner was detained while out on bond without notice or pre-deprivation hearing).

Accordingly, the Court **GRANTS** Petitioner's Amended Petition and **ORDERS** Petitioner's immediate release subject to the conditions of his preexisting parole.

**IV.    DISCUSSION**

For the reasons above, the Court **GRANTS** Petitioner's Amended Petition for Writ of Habeas Corpus [ECF No. 6] and **ORDERS** as follows:

1.    Respondents shall immediately release Petitioner from custody subject only to the conditions of his preexisting parole.

2.    Prior to any re-detention of Petitioner, he is entitled to notice of the reasons for revocation of his parole and a pre-deprivation hearing before a neutral immigration judge to determine whether detention is warranted. At such a hearing, the government shall bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight. *See Martinez Hernandez v. Andrews*, No. 1:25-CV-01035 JLT HBK, 2025 WL 2495767, at \*14 (E.D. Cal. Aug. 28, 2025) (finding that the petitioner's initial release "reflected a determination by the government

---

[1] The Court need not address Petitioner's claim arising under the APA because the Amended Petition can be resolved on due process grounds. However, the Court notes that other courts have found violations of the APA in similar circumstances. *See, e.g.*, *Noori*, 2025 WL 2800149, at \*3, 13 ("Petitioner's parole was revoked without an individualized determination or provided reasoning, which violated the APA."); *Sanchez*, 2025 WL 2770629, at \*4 (finding revocation of the petitioner's parole arbitrary and capricious because respondents did not state any reasons for the revocation).

25cv3614-LL-KSC

that the noncitizen is not a danger to the community or a flight risk" and so if the government initiates re-detention, "it follows that the government should be required to bear the burden of providing a justification for the re-detention"); *Pinchi*, 792 F. Supp. 3d at 1038 (ordering that before the petitioner can be re-detained, she must be provided with a pre-detention bond hearing before a neutral immigration judge and that she may not be detained "unless the government demonstrates at such a bond hearing, by clear and convincing evidence, that she is a flight risk or a danger to the community and that no conditions other than her detention would be sufficient to prevent such harms").

    3.    The Clerk of Court shall enter judgment in Petitioner's favor and close this case.

**IT IS SO ORDERED.**

Dated:  January 23, 2026

_____

Honorable Linda Lopez
United States District Judge